# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT SOUTH, et al.,** | |
| Plaintiffs, | |
| v. | |
| **3M COMPANY, et al.,** | CASE NO. _____ |
| Defendants. | JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court for the Tenth Judicial Circuit, Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division. As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.    Plaintiffs seek to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") and/or firefighter turnout gear ("TOG") that Plaintiffs allege were used in firefighting activities, thereby causing injury to Plaintiffs.

2.      In relevant part, Plaintiffs allege that 3M and certain other Defendants sold AFFF containing per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). (*E.g.*, Compl. ¶¶ 1, 78-132. Moreover, each Plaintiff expressly alleges that he "regularly used, and was thereby directly exposed to, AFFF . . . in training and to extinguish fires during his working career as a military and/or civilian firefighter" and allegedly suffered injury "as a result of exposure to Defendants' AFFF or TOG products" (*e.g.*, *id.*, ¶¶ 12-77; *see also*, *e.g.*, *id.* ¶ 7 ("Plaintiffs' consumption, inhalation and/or dermal absorption of PFAS from Defendant's (sic) AFFF or TOG products caused Plaintiffs to develop the serious medical conditions and complications alleged herein")).

3.      AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec").  Thus, to the extent that Plaintiffs allegedly were exposed in military settings to PFAS from AFFF manufactured by 3M, those PFAS derived from MilSpec AFFF.  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order

to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.     This action was filed on March 25, 2024 in the Circuit Court for the Tenth Judicial Circuit, Jefferson County, Alabama, bearing Case No. 01-CV-2024-901284.00. (Ex. A, Summons and Complaint.)   Venue is proper in this Court pursuant to 28 U.S.C. §§ 81(a)(3) and 1441(a) because the Circuit Court for the Tenth Judicial Circuit, Jefferson County, Alabama, is located within the Northern District of Alabama, Southern Division.

5.     3M was served on April 11, 2024.  Removal is timely under 28 U.S.C. § 1446(b).

6.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Fed. Home Loan Mortg. Corp. v. Crittenden*, 2012 WL 3023264, at *2 (M.D. Ala. June 14, 2012).

7.     Plaintiffs generally allege that certain Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors, and allege that other Defendants have designed, manufactured, marketed, distributed, and/or sold TOG products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors.  (*E.g.*, Compl. ¶¶ 1, 78-176, 178-79, 183, 223-26, 228.)  Each of the Plaintiffs expressly alleges that he "regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter" and suffered injury "as a result of exposure to Defendants' AFFF or TOG products" (*e.g.*, *id.* ¶¶ 12-77). Plaintiffs also allege that their "consumption, inhalation and/or dermal absorption of PFAS from Defendant's (sic) AFFF or TOG products caused Plaintiffs to develop the serious medical conditions and complications alleged herein" (*id.* ¶ 7).

8.     Plaintiffs assert claims against all Defendants, including 3M, for negligence (*id.* ¶¶ 247-50), battery (*id.* ¶¶ 251-63), inadequate warning (*id.* ¶¶ 264-69), design defect (*id.* ¶¶ 270-76), strict liability (statutory) (*id.* ¶¶ 277-82), strict liability (Restatement) (*id.* ¶¶ 283-91), fraudulent concealment (*id.* ¶¶ 292-99), breach of express and implied warranties (*id.* ¶¶ 300-05), and wantonness (*id.* ¶¶

306-10). Plaintiffs assert claims against the "DuPont Defendants" for fraudulent transfer (*id.* ¶¶ 311-30).

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court for the Tenth Judicial Circuit, Jefferson County, Alabama.

10. By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11. 3M reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

12. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions, have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014);

5

*Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

13.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

14.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against manufacturers and holding that, notwithstanding plaintiffs'

6

assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.    **MilSpec AFFF**

15.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

16. The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity

---

[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).
[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.
[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.
[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."  PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**II.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

*1. The "Person" Requirement Is Satisfied*

18.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute.

---

[6] *Id.*

9

For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

### *2. The "Acting Under" Requirement Is Satisfied*

19.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

20.    The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that,

10

"[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[7] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

21.     In designing, manufacturing and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

11

were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied

22.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9]  It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties).

23.    Here, Plaintiffs' claims arise at least in part from 3M's production and sale of AFFF manufactured to military specifications for use at military facilities. Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries.  3M

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.
[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by 3M and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF. The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [the defendant] manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (nexus element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).

24.    Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection between Plaintiffs' alleged injuries and 3M's actions under color of federal office thus is clear. It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection

13

exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at \*3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4. The "Colorable Federal Defense" Requirement Is Satisfied

25.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

26.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at \*2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

14

Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28. 3M has satisfied these elements for purposes of removal. The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance,

testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise," including in requiring the use of PFAS. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

29. With respect to the second requirement, the Removing Defendants' products have appeared on the DoD Qualified Products List,[11] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

---

[11] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

30.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[14] By no later

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[14] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[15] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[16] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products

---

[15] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[16] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     3M's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices

dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

33. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Circuit Court for the Tenth Judicial Circuit, Jefferson County, Alabama, to this Court.

DATED: May 13, 2024

/s/ W. Larkin Radney, IV
One of the Attorneys for
Defendant 3M Company

OF COUNSEL:

M. Christian King
Harlan I. Prater, IV
W. Larkin Radney, IV
Wesley B. Gilchrist
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com
wgilchrist@lightfootlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record, and that a copy was served via U.S. Mail to the following:

Gregory A. Cade
Gary A. Anderson
Kevin B. McKie
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456
gregc@elglaw.com
gary@elglaw.com
kmckie@elglaw.com

AGC CHEMICALS AMERICAS INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

AMEREX CORPORATION
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL 35223

ARCHROMA U.S. INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

21

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BASF CORPORATION
100 Park Avenue
Florham Park, New Jersey 07932

BUCKEYE FIRE EQUIPMENT COMPANY
c/o/ A Haon Corporate Agent, Inc.
29225 Chagrin Blvd, Suite 350
Pepper Pike, OH 44122

CARRIER GLOBAL CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CHEMDESIGN PRODUCTS, INC.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMGUARD, INC.
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, New Castle, DE 19808

CHEMICALS, INC.
c/o Ashok K. Moza
12321 Hatcherville
Baytown, TX 77520

CHUBB FIRE, LTD
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CLARIANT CORPORATION
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison, WI 53717

CORTEVA, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DEEPWATER CHEMICALS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DUPONT DE NEMOURS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

DYNAX CORPORATION
c/o Corporate Systems LLC
3500 S. Dupont Highway
Dover, DE 19901

E.I. DU PONT DE NEMOURS AND COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

JOHNSON CONTROLS, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

23

KIDDE PLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

NATION FORD CHEMICAL COMPANY
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

NATIONAL FOAM, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

PERIMETER SOLUTIONS, LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

THE CHEMOURS COMPANY FC, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

TYCO FIRE PRODUCTS LP
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UNITED TECHNOLOGIES CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

UTC FIRE & SECURITY AMERICAS CORPORATION, INC.
c/o Registered Office
15720 Brixham Hill Ave #300
Charlotte, NC 28277

ALLSTAR FIRE EQUIPMENT
c/o Joseph A Sposato
12328 Lower Azusa Road
Arcadia, CA  91006

CB GARMENT, INC.
P.O. Box 2729
Eugene, OR 97402-0275

DAIKIN AMERICA, INC.
20 Olympic Drive
Orangeburg, NY 10962

FIRE-DEX, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

FIRE SERVICE PLUS, INC.
180 Etowah Trace
Fayetteville, GA 30214

GLOBE MANUFACTURING COMPANY LLC
c/o C T Corporation System
2 1/2 Beacon Street
Concord, NH, 03301

HONEYWELL SAFETY PRODUCTS USA, INC.
c/o Corporation Service Company
251 Little Falls Dr
Wilmington, DE 19808

INNOTEX CORP.
2397 Harts Ferry Road
Ohatchee, AL 36271

L.N. CURTIS & SONS
185 Lennon Lane, Suite 110
Walnut Creek, CA 94598

LION GROUP INC.
c/o QI Services, Inc.
Federal Reserve Bldg., 4th Floor
150 E Fourth St
Cincinnati, OH 45202

MALLORY SAFETY AND SUPPLY LLC
c/o Tim Loy
1040 Industrial Way
Longview, WA 98632

MILLIKEN & COMPANY
920 Milliken Rd.
Spartanburg, SC 29303

MINE SAFETY APPLIANCES CO., LLC
c/o C T Corporation System
401 Liberty Ave
Pittsburgh, PA 15222

MUNICIPAL EMERGENCY SERVICES, INC.
c/o National Registered Agents, Inc.
701 S Carson St, Ste. 200
Carson City, NV 89701

PBI PERFORMANCE PRODUCTS, INC.
c/o Corporation Service Company
251 Little Falls Dr
Wilmington, DE 19808

RICOCHET MANUFACTURING CO., INC.
4700 Wissahickon Ave.
Bldg. 1 Box 112
Philadelphia, PA 19144

SAFETY COMPONENTS FABRIC TECHNOLOGIES, INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

SOUTHERN MILLS, INC.
c/o Mark D. Christman
6501 Mall Boulevard
Union City, GA 30290

STEDFAST USA, INC.
c/o National Registered Agents, Inc.
Attn: Samantha Sutton
3000 Montvue Road
Knoxville, TN 37919

VERIDIAN LIMITED
3710 W. Milwaukee Street
Spencer, IA 51301

W. L. GORE & ASSOCIATES INC.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WITMER PUBLIC SAFETY GROUP
101 Independence Way
Coatesville, PA 19320

/s/ W. Larkin Radney, IV
One of the Attorneys for
Defendant 3M Company